UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PHILIP ALLEN,

       Plaintiff,

v.

GONZALES CONSULTING
SERVICES, INC.,

       Defendant.
_____/

Case No. 1:10-CV-61

HON. GORDON J. QUIST

## OPINION

Philip Allen initiated this suit against his former employer, Gonzales Consulting Services, Inc. ("GCS"), in January 2010. Through stipulation of the parties and by order of the Court, all but one of the claims Allen originally raised in the Complaint have been dismissed. GCS now moves for summary judgment as to the only remaining claim: whether Allen is entitled to unpaid overtime based upon alleged violations of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq*. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

## FACTS

GCS is a federal contractor that operates a dispatch center in the Federal Building in Battle Creek, Michigan, which it took over from the previous contractor, Wackenhut Services, Inc., in January 2008. (Compl. ¶ 29; Allen Dep. Ex. B, at 22-23; Gonzales Decl. ¶ 3.) Allen worked as a dispatcher for Wackenhut and was offered the same position with GCS once it took over. (Allen Dep. Ex. B, at 23-24.) In April 2008, Allen was promoted from dispatcher to dispatch supervisor.

(*Id.*) Allen concedes that at the time he was promoted to supervisor, he agreed to a "Compressed Workweek" schedule, with his "workweek" defined such that it began Saturday at 4:00 p.m. and concluded the following Saturday at 3:59 p.m. (*Id.* at 9; Ex. C at 3; Ex. E.) Every other Saturday, Allen's shift ended at 6:00 p.m., meaning that the last two hours actually fell into the next workweek. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2; Ex E.) Allen also concedes that, in calculating the overtime to which he is entitled for purposes of this suit, he used a standard workweek (i.e., Monday through Sunday), as opposed to the company-defined workweek, and that under the company-defined workweek, he was actually paid all of the overtime to which he was entitled. (Allen Dep. Ex. B, at 16-18.) Nevertheless, he maintains that GCS set its supervisors' workweek as it did with the specific intent of avoiding overtime and that, in reality, he was working 42 hours one week and 38 the next. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The moving party bears the "initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the

---

[1] Pursuant to the 2010 amendments to Rule 56, former subdivision (c)(2), which contained the summary judgment standard, has been redesignated as subdivision (a).

movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* The evidence presented in opposition to the motion for summary judgment need not itself be in a form admissible at trial, but the party opposing the motion "must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)).

## ANALYSIS

The FLSA requires employers to pay employees one and one-half times their regular rate of pay for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a). The standard for calculating whether any overtime is owed, therefore, is the "workweek." *Id.*; 29 C.F.R. § 778.104. The Act itself does not define "workweek," but the regulations construe the term as follows:

> An employee's workweek is a fixed and regularly recurring period of 168 hours--seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act.

29 C.F.R. § 778.105.

3

With its motion for summary judgment, GCS accurately asserts that there is no dispute that Allen's workweek was a fixed, regularly recurring period of 168 hours and that he was paid all of the overtime to which he was entitled under the company-defined workweek. With his response, Allen argues only that upon his promotion to supervisor, GCS changed his workweek with the specific intent of evading the overtime requirements of the Act, which is expressly prohibited by the regulations. *See id.*

Analogous to what would occur in a FLSA retaliation claim or a Title VII discrimination claim, GCS has offered a legitimate reason for having set the workweek as it did. *See Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (explaining that the *McDonnell Douglas* burden-shifting analysis applies to FLSA retaliation claims). GCS has submitted a Declaration from Albert C. Gonzales, President and Chief Executive Officer of GCS. The affidavit alleges that GCS operates 24 hours a day, 7 days a week and implemented the compressed workweek schedule in order to comply with its obligation as a federal contractor to ensure that at least one supervisor is on duty at all times. (*Id.* ¶ 7.)

Contrary to GCS's stated reason, Allen asserts that the true reason GCS set the workweek as it did was to avoid having to pay overtime. *See Adair*, 452 F.3d at 489 (explaining that once the defendant offers a legitimate, non-discriminatory reason for its action, the plaintiff must prove that the defendant's proffered reason is not the true reason, but merely a pretext for discrimination). In support, Allen submits the following email and asserts that its author, Kristen Gladney, another former GCS dispatch supervisor, "is prepared to testify that GCS changed the 168 hour period in order to evade the overtime requirements of the Act":

> To Whom it May Concern:
>
> While I was employed as a supervisor at the Battle Creek Mega Center, following GCS being awarded the contract, supervisors were asked to sign a document

> regarding our 12 hour schedule. According to Tim Scott, the Contract Manager at the time, the reason we were signing the document was that the 12 hour schedule, as it was currently scheduled, would make supervisors on the schedule work 4 hours of overtime every other week, as well as 36 hours every other week. To avoid paying any overtime and remain on the current schedule, GCS required all supervisors sign a waiver of any overtime related to the schedule. Additionally, GCS changed the payroll work week for supervisors only, from Saturday night to Sunday night. This change was only to the program used for payroll because it automatically added the overtime. The work week remained the same in all other aspects of the position including dispatcher schedules, the "center's" end of the week reports and all other matters pertaining to the positions.

(Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4 and Ex. B.) Allen presents no further documentation or submissions to support his claim that GCS intentionally set the workweek as it did in order to evade the overtime requirements of the Act.

With its reply brief, GCS objects to the email, arguing that it constitutes inadmissible hearsay and is not based on personal knowledge. The Gonzales affidavit describes Gladney as a former dispatch supervisor who was terminated for performance reasons and who had no role in establishing company policies or procedures. (Def.'s Reply Ex. A ¶ 6.) All of GCS's HR policies and procedures, the affidavit alleges, are established by the company at its headquarters in Colorado. (*Id.*)

The Court finds that the email from Gladney cannot, on its own, give rise to a genuine issue of material fact for trial. Although the evidence Allen presents in opposing GCS's motion for summary judgment need not itself be in a form admissible at trial, he "must show that [he] *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *CareSource*, 576 F.3d at 558 (emphasis in original). Because Gladney could likely testify at trial, the fact that the email itself may not be admissible is not an issue. Nonetheless, there is no evidence that Gladney has personal knowledge of GCS's purpose in setting the policy. Rather, it appears that

Allen seeks to have Gladney testify to what she heard Tim Scott say regarding the purpose behind the compressed workweek schedule. Gladney's testimony as to what she heard someone else say would constitute inadmissible hearsay because it is an out of court statement being offered for its truth. Fed R. Evid. 801(c). Allen makes no argument for its admissibility under an exception to the hearsay rule nor does he present any evidence that Tim Scott held such a role with GCS that the statement could constitute a party admission under Fed. R. Evid. 801(d)(2). Because the evidence constitutes inadmissible hearsay and GCS has objected to it, the Court may not consider the email for purposes of summary judgment. *CareSource*, 576 F.3d at 561 ("[B]ecause the defendant objected, it would have been improper for the district court to consider documents that were not admissible in evidence."); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment."). Allen has presented no other evidence to support his position. Accordingly, summary judgment in favor of GCS is proper.

## CONCLUSION

Considering the record as a whole, the Court finds that Allen has failed to present any admissible evidence from which a rationale jury could find GCS's conduct violative of the FLSA. Accordingly, the Court will grant GCS's motion for summary judgment.

A separate order will issue.


Dated: January 19, 2011                    /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE